# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

### BECKLEY DIVISION

| | |
|---|---|
| **HOWELL W. WOLTZ,** ) | |
| ) | |
| **Petitioner,** ) | |
| ) | |
| v. ) | Civil Action No. 5:12-0238 |
| ) | |
| **Joel Ziegler, Warden,** ) | |
| **FCI Beckley,** ) | |
| ) | |
| **Respondent.** ) | |

### PROPOSED FINDINGS AND RECOMMENDATION

Pending is Petitioner's Application Under 28 U.S.C. § 2241 for Writ of *Habeas Corpus* by a Person in Federal Custody filed on February 3, 2012, by counsel, Thomas A. Rist. (Document No. 1.) By Standing Order, this matter was referred to the undersigned United States Magistrate Judge for the submission of proposed findings of fact and a recommendation for disposition pursuant to 28 U.S.C. § 636(b)(1)(B). (Document No. 2.)

### FACTS AND PROCEDURE

On February 3, 2012, Petitioner filed a Petition for Writ of Habeas Corpus Pursuant to 28 U.S.C. § 2241. (Document No. 1.) Petitioner complains that even though he "is approved to serve the remaining 10% of his incarceration on home detention pursuant to 18 U.S.C. § 3624(c) . . . he has been denied placement on home confinement and has been referred to live in a Residential Reentry Center [RRC] in Winston Salem, North Carolina." (Id., p. 1.) Specifically, Petitioner states that on May 31, 2011, Respondent recommended Petitioner for "direct home detention on February 13, 2012." (Id., p. 3.) Petitioner alleges that he "has now been advised by the Respondent that he is not being released on home confinement and has instead been referred to an RRC placement for 180

days." (Id.) Petitioner states that "Respondent's reason that Petitioner would not be released on home confinement was blamed upon a decision at the Raleigh, North Carolina Community Correction's Office." (Id.) Petitioner contends, however, that "counsel in Virginia, Art Strickland, spoke to Gary Moore, the Community Corrections Manager in North Carolina for the Petitioner, and was told that the Petitioner was cleared for home confinement but that the Respondent had not approved it." (Id.) Petitioner states that home confinement is appropriate because (1) he "is able to pay any hook-up fees, monthly fees, or other costs of a home confinement program," (2) his home is an acceptable placement, and (3) he would be easily employable as he has multiple college degrees. (Id.) Therefore, Petitioner requests that "this Court enter an order requiring the Respondent to release the Petitioner forthwith on home confinement commencing February 13, 2012." (Id., p. 5.)

In support of his Petition, Petitioner attached the following Exhibits: (1) A copy of a letter from Respondent to Chief Probation Officer Alexander dated May 31, 2011 (Id., pp. 7 - 8.); (2) A copy of Petitioner's "Request for Administrative Remedy Informal Resolution Form" dated September 30, 2011 (Id., pp. 10 - 11.); and (3) A copy of Program Statement 7320.01 (Id., pp. 14 - 26.)

By Order entered on February 6, 2012, the Court ordered that Respondent file an Answer to the allegations contained in the Petitioner's Application and show cause, if any, why the Writ of *Habeas Corpus* sought by the Petitioner in this case should not be granted. (Document No. 3.) On February 17, 2012, Respondent filed his Response to the Order to Show Cause. (Document No. 9.) Respondent argues that Petitioner's Petition should be denied based on the following: (1) "Petitioner has failed to exhaust his Administrative Remedies with regard to the issue raised in this Petition;" (Id., pp. 4 - 7.); (2) "The BOP has fulfilled its obligation to review Petitioner for a Community Confinement Placement pursuant to the factors in 18 U.S.C. § 3621(b)" (Id., pp. 7 - 9.); and (3) "Only

2

the BOP has authority to release Petitioner on home confinement." (Id., pp. 9 - 11.)

In support, Respondent attaches the following Exhibits: (1) The Declaration of Sarah Lilly (Document No. 9-1, pp. 1 - 2.); (2) A copy of the "Administrative Remedy Generalized Retrieval" dated February 13, 2012, concerning Petitioner (Id., pp. 4 - 24.); (3) A copy of Administrator Harrell Watts Response dated October 4, 2011, denying Petitioner's appeal concerning his claim that his work report and motor vehicle record was incorrectly stated on his Custody Classification Form (Remedy No. 630305-A1) (Id., p. 26.); (4) A copy of Petitioner's Central Office Administrative Remedy Appeal dated June 19, 2011 (Remedy No. 630305-A1) (Id., p. 27.); (5) A copy of Regional Director C. Eichenlaub's Response dated April 21, 2011, denying Petitioner's appeal concerning his claim that his Custody Classification Form was incorrect (Remedy No. 630305-R1) (Id., p. 28.); (6) A copy of Petitioner's Regional Administrative Remedy Appeal dated April 18, 2011 (Remedy No. 630305-R1) (Id., p. 29.); (7) A copy of Petitioner's Request for Administrative Remedy dated March 8, 2011 (Remedy No. 630305-F1) (Id., p. 30.); (8) A copy of Warden Joel Ziegler's Response dated April 8, 2011, denying Petitioner's claim that incorrect information was contained in his Custody Classification Form (Remedy No. 630305-F1) (Id., p. 31.); (9) The Declaration of Michael Snow (Document No. 9-2, pp. 1 - 2.); (10) A copy of the "Institutional Referral For RRC Placement" concerning Petitioner (Id., p. 4.); (11) The Declaration of Erlina Hernadez (Document No. 9-3.); and (12) A copy of Petitioner's "Litigation History as of February 17, 2012" (Document No. 9-4.).

Petitioner filed his *pro se* Objections and Memorandum in Support on March 6, 2012. (Document Nos. 11 and 12.) First, Petitioner contends that the Court has improperly and arbitrarily altered his Section 2241 Petition into a Section 2254 Petition.[1] (Document No. 11, pp. 1 - 3 and

---

[1] Petitioner is obviously wrong in claiming that the undersigned construed his Section 2241 Petition as a Section 2254 Petition. Pursuant to the provisions of Rule 1(b) and 4 of the Rules

Document No. 12, pp. 2 - 9.) Second, Petitioner argues "if prison grievance exhaustion did apply, cause and prejudice waives such application. (Document No. 11, p. 3.) Third, Petitioner alleges that he has "exhausted the available remedies at FPC Beckley regarding 10% home confinement as of September 25, 2011. (Id., pp. 3 - 4.). Finally, Petitioner contends Respondent and Ms. Hernadez "took arbitrary and capricious steps by refusing home confinement." (Id., pp. 4 - 9 and Document No. 12, pp. 9 - 15.)

As Exhibits, Petitioner attaches the following: (1) A copy of a letter from Petitioner to Warden Sean Marler dated September 25, 2011, concerning "Exhaustion of available administrative remedy process regarding failure to following 28 C.F.R. 570.21(b) due to false claims" (Document No. 11, p. 10.); (2) A copy of a letter from Petitioner to Unit Manager Michael Snow dated September 30, 2011, regarding "Exhausted complaint filed 9/13/11 regarding 10% home confinement" (Id., pp. 11 - 12.); (3) A copy of letters from Petitioner to Assistant Director Kathleen Kenney dated February 22, 2011 and November 7, 2011, regarding "Sleep deprivation program" (Document No. 12-1, pp. 1 - 2.); (4) The Affidavit of Inmate Charles Engle (Id., p. 3.); (5) A copy of Petitioner's Regional Administrative Remedy Appeal dated April 27, 2011, regarding sleep deprivation (Id., p. 4.); (6) A copy of Petitioner's Request for Administrative Remedy dated March

---

Governing Section 2254 Cases in the United States District Courts, the Court directed Respondent to file an Answer to the allegations contained in Petitioner's Section 2241 Petition. (Document No. 3.) Apparently, Petitioner believes the Court construed his Section 2241 Petition as a Section 2254 Petition because the Court cited the Rules Governing Section 2254 Cases. The Court notes that there are no Rules Governing Section 2241 Cases. Accordingly, it is well established that the Rules Governing Section 2254 Cases are intended to apply to cases brought under Section 2241. *See Wyant v. Edwards*, 952 F.Supp. 348 (S.D.W.Va. 1997)(Rules under Section 2254, authorizing federal courts to entertain application for habeas relief on behalf of person in state custody, are intended to apply to cases brought under Section 2241, pertaining to general grant of habeas authority.) The undersigned has properly applied the Rules governing Section 2254 Cases in processing Petitioner's Section 2241 Petition.

11, 2011, regarding sleep deprivation (Id., p. 5.); (7) Copies of e-mails regarding Petitioner's claim of sleep deprivation (Id., pp. 6 - 8.); (8) A copy of an article entitled "Sleep deprivation can affect your heart" (Id., p. 9.); (9) A copy of Petitioner's "Request for Administrative Remedy Informal Resolution Form" dated March 1, 2011, regarding sleep deprivation (Id., p. 10.); and (10) A copy of Petitioner's Inmate Request to Staff dated March 1, 2011, regarding sleep deprivation (Id., p. 11.).

## DISCUSSION

In considering an inmate's petition for *habeas* relief under 28 U.S.C. § 2241, the Court must determine whether the Petitioner is "in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3); Rose v. Hodges, 423 U.S. 19, 21, 96 S.Ct. 175, 177, 46 L.Ed.2d 162 (1975).

### A. **Exhaustion of Administrative Remedies.**

Respondent argues that Petitioner has failed to exhaust his administrative remedies concerning his current claim of entitlement to home confinement. (Document No. 9, pp. 5 - 6.) In support, Respondent submits the Declaration of Sarah Lilly, the Legal Assistant for Beckley Consolidated Legal Center. (Document No. 9-1.) Ms. Lilly states that in her position she has access to SENTRY, the Bureau of Prisons' online system containing, among other things, information about inmates' administrative remedy filings. (Id., p. 1.) Specifically, Ms. Lilly states as follows in her Declaration (Id., pp. 1 - 2.):

   4. A review of Petitioner's administrative remedies shows that he has not exhausted his administrative remedies regarding his current claim of entitlement to home confinement.

   5. Petitioner's only exhausted remedy that involves the Second Chance Act is a claim that his custody classification score was incorrect based upon false information in his file such that he was deprived of community custody status, consideration for furlough, and the benefits of the Second Chance Act.

5

      6.      Notably, the above administrative remedy was filed well before the current decision to grant Petitioner a RRC placement. As a result, this remedy did not exhaust the current claim that he should be released on home confinement.

* * *

      8.      Petitioner did initiate an administrative remedy regarding home confinement, but that remedy was not filed until January 25, 2012. The remedy was rejected at the institutional level because Petitioner tried to file it as a sensitive remedy not through the normal procedures. Therefore, Petitioner has not completed even the first level of the BOP's administrative remedy process on this claim.

In Response, Petitioner first argues that he has exhausted all available remedies concerning his placement on home confinement. (Document No. 11, pp. 3 - 4.) Petitioner explains that he filed grievances with Warden Marler and Unit Manager Snow, but both failed to properly respond to his grievance. (Document No. 11, pp. 3 - 4, 10 - 12.) Petitioner, therefore, contends that his claim is deemed exhausted. (Id., pp. 3 - 4.) In the alternative, Petitioner claims that he is excused from exhausting his administrative remedies because requiring him to exhaust would result in prejudice as he is currently due for release on home confinement.(Id., p. 3.)

Although 28 U.S.C. § 2241 does not contain a statutory exhaustion requirement, Courts consistently require prisoners to exhaust their administrative remedies prior to seeking *habeas* review under Section 2241. See McClung v. Shearin, 90 Fed.Appx. 444, 445 (4th Cir. 2004)(unpublished)(citing Carmona v. Bureau of Prisons, 243 F.3d 629, 634 (2nd Cir. 2001)); Pelissero v. Thompson, 170 F.3d 442, 445 (4th Cir. 1999); Fuller v. Rich, 11 F.3d 61, 62 (5th Cir. 1994). Exhaustion allows prison officials to develop a factual record and an opportunity to correct their own errors before being haled into Court. See Jones v. Bock, 549 U.S. 199, 204, 127 S.Ct. 910, 166 L.Ed.2d 798 (2007); McCarthy v. Madigan, 503 U.S. 140, 144-45, 112 S.Ct. 1081, 117 L.Ed.2d 291 (1992). The BOP has established an Administrative Remedy Program, 28 C.F.R. § 542.10, *et*

*seq.*, through which an inmate may seek formal review of issues or complaints relating to confinement. Depending upon at what level an inmate initiates it, the BOP's Administrative Remedy Program is a three-step or four-step grievance procedure. As a general matter, a federal inmate is required first to attempt to resolve his complaints informally by the submission of an "Inmate Request to Staff Member" form. 28 C.F.R. § 542.13. The inmate's request may be rejected if improper, and the inmate will then be advised of the proper administrative procedure. Id. Within 20 days after the circumstances occurred which are the subject of the inmate's complaints, the inmate must complete this first step and submit a formal "Administrative Remedy Request" on a BP-9 form to an institution staff member designated to receive such Requests, 28 C.F.R. § 542.14(a) and (c)(4), or under exceptional circumstances to the appropriate Regional Director. Id., § 542.14(d). The Warden of the institution and the Regional Director must respond to the inmate's Request within 20 and 30 days respectively. Id., § 542.18. If the inmate's Request was directed to the Warden of the institution and the Warden's response is unfavorable, the inmate may appeal within 20 days to the Regional Director on a BP-10. Id., § 542.15(a) and (b). If the Regional Director's response is unfavorable, the inmate may appeal to General Counsel on a BP-11 form within 30 days after the Regional Director signed the response. Id., § 542.15(a). General Counsel has 40 days to respond to the inmate's appeal. Id., § 542.18. The administrative process is exhausted when General Counsel issues a ruling on the inmate's final appeal. Id., § 542.15(a). The entire process takes about 120 days to complete. An inmate's submission may be rejected at any level for failure to comply with the administrative remedy requirements or if the submission is written in an obscene or abusive manner. Id., § 542.17(a). The inmate will be provided with notice of any defect and whether the defect is correctable. Id., § 542.17(b). If a request or appeal is rejected and the inmate is not given an opportunity to correct the defect and resubmit, the inmate may appeal the rejection to the next appeal

7

level. Id., § 542.17(c).

Petitioner contends that his claim should be deemed exhausted as of September 25, 2011, because prison staff at FCI Beckley failed to properly respond to his administrative remedy request file on September 13, 2011. Section 542.18 provides that "[i]f the inmate does not receive a response within the time allotted for reply, including extension, the inmate may consider the absence of a response to be a denial at that level." 28 C.F.R. § 542.18. Petitioner, however, failed to consider the absence of a response as a denial and proceed to the next level.[2] Petitioner, therefore, failed to fully exhaust his administrative remedies prior to filing the instant action.

Exhaustion may be excused under certain circumstances, such as by a showing of futility or irreparable injury. It is clear, however, that exhaustion should not be excused simply because an inmate believes that the length of the exhaustion process will prevent the inmate from receiving the full benefit of RCC placement. See Wright v. Warden, 2010 WL 1258181, * 1 (D.Md. Mar. 24, 2010)(slip copy)(finding that "[e]haustion of administrative remedies is not rendered futile simply because an inmate anticipates he will be unsuccessful in his administrative appeals before the 12-month pre-release mark"); Wright v. Warden, 2010 WL 1258181, * 1 (D.Md. Mar. 24, 2010)(slip copy); also see Yannucci v. Stansberry, 2009 WL 2421546, * 3 (E.D.Va. Jul. 28, 2009)(slip copy)(finding that inmate's claim that "he ran out of time to complete the administrative exhaustion process prior to filing his petition is not a sufficient excuse for failing to exhaust his [RRC] claims"); and Garrison v. Stansberry, 2009 WL 1160115, * 3 (E.D.Va. Apr. 29, 2009)(slip copy)(explaining

---

[2] Petitioner does not contend that his Administrative Remedy Request filed on January 25, 2012, resulted in the exhaustion of his home confinement claim. Even assuming Petitioner did assert exhaustion based upon his Administrative Remedy Request filed on January 25, 2012, this claim would be without merit. Petitioner's January 25, 2012, administrative remedy was rejected at the institutional level because he failed to follow proper procedure. Therefore, Petitioner has not completed the first level of the BOP's administrative remedy process.

that granting review of RRC placement claims because of "time-sensitivity" would encourage the filing of similar petitions before the administrative remedy process has run its course, which would "both undermine the effectiveness of the administrative review process and burden the Court with superfluous claims"). Based on the foregoing, the undersigned finds that Petitioner is not excused from exhausting his administrative remedies and his Petition should be dismissed. Notwithstanding Plaintiff's failure to exhaust, the undersigned will consider the merits of his claims.

**B.     Application of 18 U.S.C. §§ 3621(b) and 3624(c).**

Pursuant to 18 U.S.C. § 3621, the BOP has authority to designate a prisoner's place of imprisonment. Section 3621(b) provides five factors to be considered by the BOP in determining a prisoner's placement:

> (1) the resources of the facility contemplated;
>
> (2) the nature and circumstances of the offense;
>
> (3) the history and characteristics of the prisoner;
>
> (4) any statement by the court that imposed the sentence -
>
>> (A) concerning the purposes for which the sentence to imprisonment was determined to be warranted; or
>>
>> (B) recommending a type of penal or correctional facility as appropriate; and
>
> (5) any pertinent policy statement issued by the Sentencing Commission pursuant to section 994(a)(2) of title 28.

18 U.S.C. § 3621(b). 18 U.S.C. § 3624(c) provides that a prisoner may be granted pre-release custody allowing a prisoner to serve a portion of his sentence in the community, such as home confinement, placement in a community correctional facility, or RRC. See 18 U.S.C. § 3624. Section 3624(c)(1) governs pre-release RRC placements. As amend by the Second Chance Act of 2007, Section 3624(c)(1) provides as follows:

> The Director of the Bureau of Prisons shall, to the extent practicable, ensure that a prisoner serving a term of imprisonment spends a portion of the final months of that term (not to exceed 12 months), under conditions that will afford that prisoner a reasonable opportunity to adjust to and prepare for the reentry of that prisoner into the community. Such conditions may include a community correctional facility.

The Second Chance Act required that the BOP issue new regulations designed to ensure that RRC placements are "(A) conducted in a manner consistent with section 3621(b) of this title; (B) determined on an individual basis; and (C) of sufficient duration to provide the greatest likelihood of successful reintegration into the community." 18 U.S.C. § 3624(c)(6). In compliance with the above, the BOP adopted regulations set forth in 28 C.F.R. § 570.20 - .22. Section 520.21 provides that a prisoner's maximum allowable time in a RRC placement is 12 months. See 28 C.F.R. § 570.21. The regulations, however, do not set any minimum amount of time that a prisoner must spend at a RRC placement. Section 520.22 requires the BOP to make RRC placement decisions "on an individual basis" and to allow placement "of sufficient duration to provide the greatest likelihood of successful reintegration into the community." See 28 C.F.R. § 570.22. The 12-month RRC period is a statutory maximum and it is not mandatory that prisoners receive 12-months in RRC placement. See 18 U.S.C. § 3624(c); Woodall v. Federal Bureau of Prisons, 432 F.3d 235, 251 (4th Cir. 2005)(stating that "the BOP may assign a prisoner to [a RRC placement] does not mean that it must").

Based upon a review of the record, the undersigned finds that Petitioner has appropriately been considered for pre-release placement pursuant to Section 3621(b). Respondent explains that the Unit Team meets with an inmate during Program Review, which is a process used by the BOP to review inmate progress and to tailor individual programs to meet particular needs of each inmate. Respondent filed a Declaration from Mr. Snow explaining the Unit Team's consideration of Petitioner for prerelease placement on home confinement and at a RRC. (Document No. 9-2.)

Specifically, Mr. Snow states that "[b]ased upon the criteria in 18 U.S.C. § 3621(b), inmate Woltz's Unit Team considered him for community confinement and recommended that inmate Woltz be placed on direct home confinement for a period of six months or, if not possible, to a Residential Reentry Center for 151 - 180 days." (Id., p. 1.) Mr. Snow further declared that the Residential Reentry Manager [RRM] "makes the final determination as to whether an inmate will receive home detention or placement in a RRC." (Id., p. 2.) Respondent, therefore, attached the Declaration of RRM Hernandez. (Document No. 9-3.) RRM Hernandez declared as follows (Id.):

4. As the RRM, I am in charge of staff at the Residential Reentry Office. My office reviews inmates for placement in Residential Reentry Centers and for home confinement placement.

5. I am aware that inmate Woltz was referred to my office with a home detention recommendation by his unit team, or if not possible, to a RRC placement.

6. My office staff determined that inmate Woltz should receive an RRC placement first, and not direct home confinement.

7. This decision is based upon my instructions to staff, based upon my correctional experience, that an inmate should ordinarily first transition from the placement of incarceration to an RRC prior to receiving home confinement.

8. This transition allows RRC staff to determine if an inmate will adequately adjust to being on home detention or whether additional time is needed in an RRC. In a lot of cases, an inmate may only be at an RRC for days or weeks prior to transiting to home detention.

9. This transition to an RRC is especially important in cases where inmates, like inmate Woltz, have a recent disciplinary history for refusing to comply with rules.

10. Though my office granted inmate Woltz placement in an RRC, it was not a denial of home detention altogether. If inmate Woltz had gone to an RRC and adequately adjusted, he would most likely have been sent to home detention after a short stay at the RRC.

11. I am aware that inmate Woltz refused that placement. I am also aware that inmate Woltz's unit team recently referred him again to my office for home

>     detention. In fact, I have personally reviewed inmate Woltz's referral information.
>
> 12. This month, my office once again approved inmate Woltz for an RRC placement beginning February 21, 2012. This determination is based upon my belief that inmate Woltz should transition to an RRC prior to any placement on home detention.
>
> 13. Inmate Woltz once again refused the RRC placement.

(Id., pp. 1 - 2.) Although Petitioner disagrees with the outcome, there is absolutely no doubt that Petitioner received an individualized assessment for a pre-release placement using the factors contained in Section 3621(b). See Syrek v. Phillips, 2008 WL 4335494 (N.D.W.Va. Sep. 17, 2008)(finding that "the BOP must consider the § 3621(b) statutory factors" and "cannot rely upon a categorical formula to determine the length of an inmate's CCC placement"); also see Specter v. Director Federal Bureau of Prisons, 2010 WL 883733, * 5 (D.S.C. Mar. 5, 2010)(slip copy)(stating that "[u]nder these new regulations, an inmate presents a valid claim only if he is denied individual consideration based on § 3621(b) factors"); Garrison v. Stansberry, 2009 WL 1160115 at * 5(finding that "the Court lacks the authority to direct the BOP to consider specific characteristics for each prisoner who is reviewed for RRC placement; the Court is limited to asking whether the BOP used the five factors and cannot engage in a review of the substantive merits or thoroughness of the BOP's analysis"). Therefore, the undersigned finds that the BOP appropriately considered Petitioner for pre-release placement pursuant to Section 3621(b).[3] Having been approved for the placement, Petitioner

---

[3] The Court further finds that Petitioner does not possess a constitutionally protected interest in placement on home confinement. The Fourth Circuit has specifically stated that "[t]he federal constitution itself vests no liberty interest in inmates retaining or receiving any particular security or custody status '[a]s long as the [challenged] conditions or degree of confinement . . . is within the sentence imposed . . . And is not otherwise violative of the Constitution." *Slezak v. Evatt*, 21 F.3d 590, 594 (4th Cir. 1994), *cert. denied*, 513 U.S. 889, 115 S.Ct. 235, 130 L.Ed.2d 158 (1994); *see also Neals v. Norwood*, 59 F.3d 530, 533 (5th Cir. 1995)(finding that "a prison inmate does not have a protectable liberty or property interest in his custodial classification and an inmate's disagreement

refused it. Notwithstanding Petitioner's failure to exhaust administrative remedies, Petitioner's claim clearly fails on its merits for these reasons.

## **PROPOSAL AND RECOMMENDATION**

Based upon the foregoing, it is therefore respectfully **PROPOSED** that the District Court confirm and accept the foregoing factual findings and legal conclusions and **RECOMMENDED** that the District Court **DISMISS** Petitioner's Petition for Writ of *Habeas Corpus* by a Person in Federal Custody under 28 U.S.C. § 2241(Document No. 1.) and **REMOVE** this matter from the Court's docket.

The Petitioner is hereby notified that this "Proposed Findings and Recommendation" is hereby **FILED**, and a copy will be submitted to the Honorable United States District Judge Irene C.

---

with a classification is insufficient to establish a constitutional violation"); *Posey v. Dewalt*, 86 F. Supp.2d 565, 571 (E.D.Va. 1999), *appeal dismissed by*, 215 F.3d 1320 (4th Cir. 2000), *cert. denied*, 531 U.S. 971, 121 S.Ct. 411, 148 L.Ed. 318 (2000)(stating that "[p]ut simply, petitioner has not stated a due process claim because he has no protected liberty interest in a particular classification within BOP"). Neither Section 3621(b) nor Section 3624(c) contain explicit mandatory language or standards limiting the BOP's discretion, which may have given rise to a protected liberty interest in a particular security classification. Title 18, U.S.C. § 3621(b) clearly vests the BOP with broad discretionary authority as to prisoners' placement and classification while incarcerated. *See* 18 U.S.C. § 3621. *See also Trowell v. Beeler*, 135 Fed.Appx. 590, 595 (4th Cir. 2005)(finding that "BOP must exercise its own independent judgment" under Section 3621(b)). The language of Section 3621(b) stating that the "Bureau may designate any available penal or correctional facility that meets minimum standards of health and habitability . . . that the Bureau determines to be appropriate and suitable," is clearly permissive; the statute does not *mandate* that the BOP place a prisoner in a certain facility. Furthermore, Title 18 U.S.C. § 3624(c) "does not direct that the BOP must place prisoners in a particular facility, such as a halfway house, to achieve these 'pre-release conditions.' Rather, pursuant to § 3621(b), and subject to the § 3624 limitation periods, the BOP retains discretion to determine whether the pre-release conditions or programs will be provided within a BOP facility or within a community confinement setting." *Bost v. Adams*, 2006 WL 1674485 (S.D.W.Va. Jun 12, 2006)(finding that petitioner "does not possess a statutorily created liberty interest in release to community confinement"); *also see Pennavaria v. Gutierrez*, 2008 WL 619197, * 9 (N.D.W.Va. Mar. 4, 2008)(stating that federal prisoners do not have a protected liberty interest in being placed on home confinement, and the BOP has complete and absolute discretion regarding where a prisoner is to be held in pre-release confinement).

Berger. Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), and Rule 6(d) and 72(b), Federal Rules of Civil Procedure, the Petitioner shall have seventeen days (fourteen days, filing of objections and three days, mailing/service) from the date of filing of this Proposed Findings and Recommendation within which to file with the Clerk of this Court specific written objections identifying the portions of the Findings and Recommendation to which objection is made and the basis of such objection. Extension of this time period may be granted for good cause.

Failure to file written objections as set forth above shall constitute a waiver of *de novo* review by the District Court and a waiver of appellate review by the Circuit Court of Appeals. Snyder v. Ridenour, 889 F.2d 1363 (4th Cir. 1989); Thomas v. Arn, 474 U.S. 140, 106 S. Ct. 466, 88 L. Ed. 2d 435 (1985); Wright v. Collins, 766 F.2d 841 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91 (4th Cir. 1984), cert. denied, 467 U.S. 1208, 104 S. Ct. 2395, 81 L. Ed. 2d 352 (1984). Copies of such objections shall be served on opposing parties, District Judge Berger, and this Magistrate Judge.

The Clerk is requested to send a copy of this Proposed Findings and Recommendation to Petitioner and counsel of record.

Date: March 23, 2012.

R. Clarke VanDervort
United States Magistrate Judge

14